PER CURIAM:
Claimants brought this action for water damage to their residence and property which they allege was caused by the negligent design and maintenance of *327 the drainage system for U.S. Route 60 in Clintonville, Greenbrier County. This portion of U.S. Route 60 is maintained at all times herein by respondent in Greenbrier County. At the hearing ofthis claim, the Court consolidated two claims (CC-01-252 and CC-01 -320) into one claim since both claims relate to the same set of facts and circumstances. Further, the Court heard the claim on the issue of liability only. The Court is of the opinion to deny this claim for the reasons stated more fully below.
Claimants’ residence is located adjacent to U.S. Route 60 in Clintonville, Greenbrier County. Their home is situate on eight and one-half acres of land. Claimants first rented their home in 1978 and purchased it in 1979 with one acre of land. In 1988, claimants purchased an additional seven and one-half acres of land. Claimants have made additions to their home and property by adding a driveway, car port, and a garage. There is a split rail fence between claimants’ property and U.S. Route 60 with a gravel berm that extends from the highway back to the claimants’ property that is approximately five yards wide. Claimants’ residence is located approximately fifteen yards from U.S. Route 60. The property and highway are in a rural mountainous area and claimants’ property is situate near the head of a hollow. U.S. Route 60 extends past the claimants’ property in a westerly direction winding around the hill above claimants’ property. There is a small parcel of land at the top of the hill directly above claimants’ property line which is owned by the Brownings, one of claimants’ neighbors. This small parcel of property has a hunting or camping lodge on it and abuts U.S. Route 60. There is a fence line located between claimants’ property and the Brownings’ property. The fence is approximately seventeen feet in length and it has attached to it a plastic silt barrier approximately five feet high. Claimants placed the silt barrier along the fence to prevent dirt and debris from sliding down the hill onto their property from the Brownings’ property and to prevent the erosion of their hillside. To the east of claimants’ property line is the Heaster property which is a small parcel of land also abutting U.S. Route 60. The Heaster property line extends westerly up the hill above claimants’ property and ends at the eastern corner of the Brownings’ property line. The Heaster property is situate between U.S. Route 60 and claimants’ property. The ditch line for this portion of U.S. Route 60 is located on the side of the road opposite claimants’ property. The water from the ditch line flows through a new twenty-one inch by fifteen inch elliptical culvert underneath U.S. Route 60 and onto the He aster property where it then flows in an open ditch before reaching claimants’ property. This culvert was installed by respondent in April 2000 to replace an existing culvert due to a complaint made by Mr. Harrah to respondent to clean the ditches in order to help his drainage problem. The old culvert was eighteen-inches in diameter. Respondent found that the culvert was collapsed while cleaning the ditches. It had to be replaced in order to allow the flow of drainage water from the hillside and the ditch line along U. S. 60. According to respondent, the new pipe is equivalent in size to the old pipe.
There is also a creek on the claimants’ property in which the water flows down the hillside through an open natural channel until it reaches the flat valley portion of claimants’ property. Mr. Harrah estimates that it is approximately 125 to 200 yards from their home to the culvert opening above his property. The creek stops flowing through its open natural channel just prior to the center of claimants’ backyard. At this location, claimants have attempted to enclose the creek by *328 channeling it with corrugated pipe and fifty-five gallon barrels opened at both ends all the way to their home. Claimants testified that they used barrels instead of pipe because they could not afford to buy enough pipe to cover the entire area. The artificial channel is approximately three and one-half feet deep and three and one-half feet wide in most locations. At approximately the middle of claimants’ backyard, the creek naturally splits with one small branch flowing toward a natural spring located behind claimants’ home, and the main portion of the creek flowing toward their home. Claimants built a small spring house structure over the natural spring. They use this natural spring for water when the water pump at their well quits working occasionally. Mr. Harrah stated that the water in the spring house does not flow out of the building unless there is a heavy rainstorm. He also stated that the water level in the spring remains at approximately three and one-half feet deep and that it has never completely dried up. The main portion of the creek flows a few yards away from the spring house and empties into a channel made by claimants which is located a few yards in front of the spring house. This channel is made of tin and it is approximately three to three and one-half feet deep. The creek flows through the channel which is located adjacent to claimants’ garage and twelve feet away from their home. It then directs the flow of the water under claimants’ driveway where the water empties into respondent’s three foot by three foot box culvert underneath U.S. Route 60 and empties on the other side of the highway. This box culvert has been restricted by claimants who placed an eighteen-inch culvert pipe surrounded by rocks and soil inside the box culvert. The water flowing through claimants’ pipe inside the box culvert flows under the highway and into the four feet by four feet box culvert.
Claimants both testified that they have had some flooding problems since 1979 but these problems became much worse in April 2000 after respondent performed work on the local drainage system. Claimants allege that their property has been damaged by flooding on numerous occasions due to excessive water flowing through the creek and onto their property. Claimants are of the opinion that their problems with surface water are the result of actions on the part of the respondent. First, they allege that respondent permitted a neighbor to remove part of the silt barrier attached to the fence located on the hill above their home which allowed more water to flow directly onto their property washing additional silt, rock, and mud onto their land. According to the claimants, this caused the erosion of a portion of their property and clogged up the culverts they had placed to channel the water through their property. Claimants stated that prior to the neighbor removing the silt barrier from the fence, the surface water did not flow directly onto their property as it was diverted in another direction. Second, claimants allege that respondent caused flooding problems by installing a new and larger culvert beneath U.S. Route 60 above their property. Mr. Harrah also testified that the new culvert is located in a different location and it has caused a much higher volume of water to flow onto their property. According to Mrs. Harrah, the flooding has washed out part of their driveway and caused cracks in the driveway. The garage flooded, and on at least one occasion the water was three feet deep, leaving behind water stains and mud. Claimants’ basement also has flooded and surface water flowed into their water well contaminating it. Mrs. Harrah testified that there were certain dates when heavy rain falls caused the majority of their damages. The first incident occurred on April 13,2000, and this incident was followed by another flood on May 14,2000. *329 Coincidentally, Mrs. Harrah testified that the next serious flood occurred on May 14 and May 15, 2001. Mrs. Harrah stated that one of the worst floods occurred on July 8, 2001. The last flood occurred on September 3, 2002, at which time many of the barrels in the channel collapsed.
Mr. Harrah testified that he has attempted to use self-help measures to resolve or alleviate the flow of water onto his property by using the barrels and some corrugated pipe. In addition to not wanting to look at an open creek on their property, claimants were of the opinion that by channeling the water it would reducé the flooding. Mr. Harrah testified that he used twelve-inch diameter and fifteen-inch diameter corrugated pipe to channel a portion of the creek. However, he has used more fifty-five gallon barrels in place of corrugated pipe because of its high expense. According to Mr. Harrah, this channeling method has helped to reduce the flooding over the years. He stated that he does not see the water flowing across the road in front of his house as often. Further, he believes it has enhanced the aesthetic value of the property because the creek is primarily enclosed and cannot be seen flowing through the middle of the property and down the side of their house. However, Mr. Harrah also testified that the flooding problems have been exacerbated by respondent when it replaced the old culvert on U.S. Route 60 above claimants’ property. He is of the opinion that the new culvert is too large and is therefore dumping more water onto claimants’ property. He testified that since April 2000, when respondent put in the new culvert pipe, the water channel on his property has increased in height and width. According to Mr. Harrah, the channel was one and one-half feet deep in most places prior to April 2000. It is now approximately three to three and one-half feet deep in most places. He testified that on September 3, 2002, he observed that many of the barrels had collapsed. He and his son, Stanley Harrah, had to dig up most of the barrels and remove them. He attributes the barrels collapsing to water running through them, keeping them damp as well as the salt from the road flowing with the water which slowly erodes the barrels on the inside. However, Mr. Harrah admits that he placed these barrels in the creek channel approximately twenty-three years ago.
Claimants contend that respondent negligently increased the amount of surface water flowing onto their property by using a culvert that is too large for claimants’ drainage system to adequately handle and that respondent negligently allowed the removal of the silt barrier attached to the fence above their residence resulting in the flow of more water and mud onto their property causing erosion.
It is respondent’s position that it has not caused claimants’ flooding problems because the new culvert pipe did not increase the volume of water flow onto claimants’ property. Also, respondent maintains that the proximate cause of claimants’ flooding problem is due to the fact that their property is located in a natural drainage area and that claimants’ self-help measures of channeling the water have caused the water problems to be exacerbated.
Joe Hayes Jr., currently the FEMA coordinator for respondent, testified that he was the District 9 Administrator for respondent in the spring of 2000. As District 9 Administrator, he was responsible for overall road maintenance and construction in Greenbrier County. Mr. Hayes described the terrain in this particular area of U.S. 60 as having a hillside on the opposite side of the highway above claimants’ property which is an area of approximately 20 acres all of which drains toward claimants’ property in addition to the eight acres of hillside on claimants’ property. All the rain *330 falling on this hillside and onto claimants’ hillside property eventually drains onto claimants’ property as it is the natural drainage area. He testified that sometime during the spring of 2000 he was instructed to clean the ditch lines and all culvert pipes along the portion of U.S. Route 60 near claimants’ property. According to Mr. Hayes, this work was performed at the request of Mr. Harrah when he complained that water was flowing across the highway rather than in the ditch line which had leaves and debris. Mr. Hayes immediatelyhad the ditch lines cleaned and attempted to clean out the existing culvert pipe above claimants’ property but discovered that it was collapsed. Thus, respondent replaced the old eighteen-inch, round culvert with a new flat bottom elliptical culvert that is twenty-one inches wide and fifteen inches high. According to Mr. Hayes, the new pipe has the same capacity and equivalency as the older eighteen-inch pipe so it does not increase the volume of water onto claimants’ property. Mr. Hayes stated that this, was all of the work respondent performed on the local drainage system. He also stated that prior to this work he observed a large amount of surface water flowing across U.S. Route 60 into the natural drainage area which was on claimants’ property. According to Mr. Hayes, whether the water flows across the road or through the ditch line and culvert, it ends up flowing into the “natural drainage area” which is through claimants’ property. Mr. Hayes also testified that Mr. Harrah came to his office regarding the excavation and removal of the silt barrier on the fence by one of claimants’ neighbors. Mr. Hayes stated that claimants’ neighbors did a poor job of re-seeding the area they had excavated and that there was some erosion on claimants’ property as a result. However, he testified that respondent did not remove the silt barrier at the fence or give approval to claimants’ neighbors that they could make a change at the fence line. Mr. Hayes testified that this was a private fence on private property and that respondent had absolutely nothing to do with this incident. Finally, Mr. Hayes testified that U.S. 60 and the surrounding drainage system had been the same configuration since the road was widened ini955.
Dr. George Alan Hall, a Geotechnical Research Engineer with respondent’s Engineering Division and its drainage expert for this particular claim, testified that he visited the site of claimants’ property and U.S. 60 inFebruary 2002. He observed the drainage system and the surrounding area and he had his investigator photograph the same. Dr. Hall also worked with topographical mapping of the area and made hydrologic and hydraulic analyses in preparing his testimony for this claim. Dr. Hall is of the opinion that the proximate cause of claimants’ flooding problems stem from two fdetors. The first factor is that there has always been a flooding problem at this location because it is situate in a hollow where claimants’ house and garage are virtually acting as a dam for the water. The second factor causing claimants’ flooding problems stems from Mr. Harrah’s self-help measures in creating numerous makeshift channels using a mixture of corrugated pipe and barrels to direct the flow of water throughout his property. Dr. Flail testified that by using different size pipes and barrels claimants have inadvertently restricted the flow of water due to the fact that every time water goes through a different size drainage head it loses its head flow strength or energy. According to Dr. Hall’s analysis, claimants’ drainage system will not carry the quantity of water needed to carry it past their house. He also stated that the twelve-inch pipe that is under claimants residence and connects to respondent’s culvert in front of their home has only a thirty percent flow of water due to a loss of head flow. Dr. Hall testified that the current system of channels *331 claimants have created will only handle a less than one year storm which will result in numerous floods in the future. He opined that the fact that timber on the hillsides above claimants’ home has been removed by claimants and/or the power company is also a contributing factor to the amount of water flowing onto the property. Dr. Hall concluded that respondent did not create or worsen the claimants’ flooding conditions by placing the new culvert beneath U.S. 60.
The Court previously has held that respondent has a duty to provide adequate drainage of surface water, and that drainage systems must be maintained in a reasonable state of repair. Haught v. Dept. of Highways, 21 Ct. Cl. 237 (1980). To hold respondent liable for damages caused by an inadequate drainage system, claimants must prove that respondent had actual or constructive notice of the existence of an inadequate drainage system and a reasonable amount of time to take corrective action. Orsburn v. Div. of Highways, 18 Ct. Cl. 125 (1991); Ashworth v. Div. of Highways, 19 Ct. Cl. 189 (1993).
The Court, after a careful review of the evidence in this claim, is of the opinion that the flooding and the related damage to claimants’ property were caused by a combination of circumstances, including the lay of the land, the location of claimants’ home and garage at the end of the hollow, and the self-help measures taken by claimants. The evidence establishes that claimants’ property is located at the head of a hollow where there have been known flooding problems for many years. The evidence also establishes that due to their location claimants’ home and garage both acted as dams for the water flowing down the hill. Further, Dr. Hall’s testimony establishes that while Mr. Harrah attempted to reduce the flooding on claimants’ property, he has inadvertently made it worse and each time there was a heavy rain, the channel could not contain the water so it could flow through the culvert underneath U.S. Route 60 and away from their property as it’s supposed to do. There is insufficient evidence to establish that any actions on the part of the respondent caused or contributed to claimants’ flooding problems. Respondent acted diligently in cleaning the ditches along U.S. Route 60 and replacing the collapsed culvert once claimants notified respondent about their drainage problems in April 2000. While the Court is sympathetic to the claimants’ situation, the Court is of the opinion that there is insufficient evidence of negligence on the part of respondent upon which to justify an award. It should be noted that during the hearing of this matter Dr. George A. Hall offered to visit claimants’ property and to provide his expert advice in correcting their flood problems. This is a generous offer and one which the Court believes would be in the best interest of the claimants to pursue.
In accordance with the findings of fact and conclusions of law as stated herein above, the Court is of the opinion to and does deny this claim.
Claim disallowed.